It is therefore the opinion of the Court, that money in the possession of the Defendant may be taken in execution under a Writ of Fi. Fa. issued against his goods and chattels.
The second question referred to our consideration would, it is thought, have admitted of very little doubt, if it was to be determined by the reasonableness or unreasonableness of the practice, independent of all authority. By the form of the Writ of Fi. Fa. the Sheriff is commanded to have the same before the Court, to render to the Plaintiff of his debt and damages ; and by the form of his return, he admits that “ before the Court he has it ready, as the Writ requires.” (e) This proves that when the Writ was devised, it was strictly the duty of the Sheriff to bring the money into Court, subject to its order ; and it has been even held, that payment to the creditor himself could not excuse the non-performance of this duty. Although this rule has been relaxed, and the Sheriff may now make such payment in ordinary cases, where there is no obstruction to his act, yet the right of the Court to direct the application of the money, still, in strictness, remains; being derived, not only from the form of the Writ as evidence of the Law, but, from the general authority of the Court, to superintend its process, and control the conduct of its officer in relation to a subject upon which *the process operates. Nor would the Sheriff, even now, be justified in deviating from the mandate of his Writ, by paying over the money instead of bringing it into Court, in any other than a plain case, where no dispute had arisen and ho execution had come to his hands against the goods and chattels of -the Plaintiff. In cases where the rights of other parties were involved, he would still be held down to the letter of his Writ. If, then, he brings money into Court, to be rendered to A. and the Court is applied to by a Plaintiff in another execution against A. to order the Sheriff to make the payment to him, it would seem to be most reasonable that it should be done, if money be liable at all to execution. For, why order the payment to A. if the money eo instanti was liable to be taken under the execution against him ? It would be a vain and useless thing, or it would be an unjust one.
The Court have examined the Cases for the purpose of seeing whether such an application on the part of the Plaintiff, in a second execution, has ever been resisted, and on what grounds. In Armistead and Philpot, before mentioned, it was granted : but as the Rule there, was made absolute, by consent, the Case is entitled to very little weight as an authority. In Turner and Fendall, the Court expressed a clear opinion, that where money made under execution is brought into Court according to the command of the Writ, the Court may direct it to be paid over in satisfaction of a second execution, whenever the legal and equitable right to the money is in the person whose goods are liable to such second execution. In New York this doctrine has been explicitly recognised in the Cases of Williams v. Rogers, and Ross v. Same, 5 John. 163; and in Ball and Ryers, 3 Caine’s Rep. 84. In opposition to it, the English Cases of Fieldhouse and Croft, 4 East. 510; Willows v. Ball, 5 Bos. & Pul. 376; and Knight v. Criddle, 9 East. 48, are cited in 2 Bac. Abr. 715, tit. “ Execution.” But on referring to the two first named decisions, they do not appear to effect the doctrine laid down in Turner and Fendall; and as to Knight and Criddle, it turns altogether upon the assumption, that money could not be taken in execution. In Fieldhouse and Croft, the Court refused to stay in the Sheriff’s hands the surplus of a former execution. But this surplus is not commanded to be brought into Court, nor is it at all included in the Writ, under which the Sheriff acts. On *the contrary, it is his duty to return it immediately to the debtor, without waiting for an Order of Court. It is the debtor’s money in the hands of a third person, having no authority over it; and, therefore, is unlike the case submitted to us, in its facts and principles.
*221 The Case of Willows and Ball is, in the same manner, distinguishable from the present. The Defendant there, had previously recovered a verdict against the Sheriff for his misconduct in Office, and the Plaintiff’s application was, to order him (the .Sheriff), to pay over the damages so recovered in satisfaction of the Pi. Pa. This, the Court of Common Pleas refused, the Chief Justice declaring he could see no distinction between that money so due from the Sheriff to Ball, the Defendant, and any other debt due from the Sheriff to him ; and he put the case of a Steward having money of his Master, and that Steward to be Sheriff; and asked whether the Court could, in that case order him to pay over that money to a creditor of his Master ?
It is manifest that the question we have now to decide, does not involve such considerations.
But in Knight and Criddle, the Court of King’s Bench do seem to have decided the point against the authority of the Court to make the order. In that Case the Sheriff had made for the Defendant, under an execution in his favour, 60/. in bank notes, and the Plaintiff, on affidavit of the facts, moved for a rule to shew cause why the Sheriff should not apply it to the Pi. Pa. then in his hands against the Defendant. Lord Ellen-borough, is reported to have said, “ We ought not to force the Defendant to come here to shew cause against a motion founded on an assumption, that money, (and bank notes for this purpose are the same) may be taken in execution. It is an innovation on the Daw,” &c. To this dictum of his Bordship, unsupported by authorities, and obviously opposed to the opinion of Bord Mansfield, in Armis- , tead and Philpot, (who says the contrary idea is founded on aquaint reason,) we cannot give our assent. That it is no innovation upon the Baw, is proved by the Case in Shower, and the authority of Dyer ; and that it is strictly in accordance with general principles, we have already shewn. The authority of this Case, therefore, is destroyed, by shewing that its reasoning is false, or rather that it proceeds upon the incorrect notion, (perhaps hastily adopted,) that money was never liable to execution. It ought not then, to induce us to depart *frotn the American Authorities, and from what we consider a reasonable and convenient practice, opposed to no other Case, and to no principle of our jurisprudence, but supported by all its analogies, and by several respectable adjudications.
A more weighty objection to the practice, was urged in conference, arising out of a late provision in our Act of Assembly, (f) which madfe Writs of Fi. Fa. returnable to the Clerk’s Office on some Rule Day, as well as to the Court; at the election of the Plaintiff. It was said with much plausibility, that if the Writ was returnable to a Rule Day, the Sheriff would be bound to pay over the money without waiting, in any case, for the Order of the Court, and that the money would then never come within its control, upon which circumstance its authority was by the argument made to depend. But a large majority of the Court are of opinion, that this alteration in the Baw ought not to be considered as changing any former rule of Baw, or abridging rights which once existed. To give it this effect, would be to establish an inconvenient and unreasonable distinction between executions returnable to Court, and executions returnable to the Rules ; not warranted by the form of the Writ, as prescribed in the same Act, nor intended by the Begisla-ture at the time. The sheriff is still commanded to have the money before “the Judges or Justices to render to the Plaintiff whether the day of the return is to the Rules, or to the Court. If it is returnable to a day prior to the Court, he may pay the money over, where no obstruction exists to his so acting ; just as he might under the modification of the old rule, pay the money without the order of the Court. But, if he has received notice to retain it, he must still comply strictly with his Writ, by bringing it into Court. His default in ordinary cases commences by non-payment at the Return Day; but a notice to retain, excuses the default, or perhaps a second execution against the Plaintiff, in the first; even without notice to retain. If such notice, or such second execution was delivered to him after the return day Of the first, he-might still, on the motion of the person entitled to the money, be fined for his default whilst it lasted : and thus in all cases the practice might be made to conform to the new *Baw, and under the discretion of the Court,, be so modelled, as to do substantial justice, and prevent all undue influence and partiality.
Por these reasons, the Court is of opinion, that where money made under execution, is in the Sheriff’s hands, or is brought into Court according to the command of a Writ of Pieri Pacias, the Court may direct it to be paid over in satisfaction of another Writ in the hands of the same Sheriff, against, the goods and chattels of the Plaintiff in the first execution, he having the legal and equitable right to receive the same.
As to the third and last question submitted, we can see no good reason for confining the authority of the Court to cases where sufficient effects of the Defendant cannot otherwise be found to satisfy the execution. These are perhaps the cases which have generally occurred in practice, but they are not the only ones in which the authority may be properly exercised. As it is an application to the sound discretion of the Court, it ought only to interfere in cases where the application seems reasonable. But its unreasonableness would not, in, our ,bpinioti, depend upon the circumstance of'the Defendant’s having sufficient other property. On - the contrary, if that were the only objection to the motion, the order ought to be made. But the Court thinks it unnecessary to decide, whether the right of the Plaintiff to have the money so applied extends to all cases where the money might be lawfully taken if found in the Defendant’s possession. *222 This is a question not arising- in this record, and occupying a ground too broad to be incautiously taken. On the third point, it is the opinion of this Court, that the power of the Superior Court to make such order, is not confined to cases where sufficient effects of the Defendant in the second execution cannot otherwise be found to satisfy the judgment ; and that, upon the other branch of the said third proposition, it ought to give no opinion : which decisions of the Court are to be certified,” &c.

 See 1 Rev. Code, ch. 134, § 1, p. 524-5-6.

 Vide 1 R. C. ch. 134, § 1. Change effected in 1813.